**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **EFREN CORRAL**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 16 C 4315 |
| | ) |
| **NANCY A. BERRYHILL**, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Efren Corral ("Corral") seeks judicial review pursuant to the Social Security Act (the "Act"), more specifically 42 U.S.C. §§ 405(g) and 1383 (c)(3),[1] of the final decision by Acting Commissioner of Social Security Carolyn Colvin ("Colvin")[2] that denied Corral's claims for Social Security Disability ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. Corral appeals the decision of the Commissioner, and the Commissioner seeks summary judgment.[3] For the reasons given in this memorandum opinion and order,

---

[1] All further statutory references will take the form "Section --," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. Part 404 will be cited "Reg. § --," omitting the prefatory "20 C.F.R. 404 --."

[2] Because Colvin has been succeeded by Nancy Berryhill ("Berryhill"), who is the Commissioner of Social Security, Fed. R. Civ. P. ("Rule") 25(d) calls for an automatic substitution of Berryhill for Colvin. Accordingly the case caption has made that change, and all text references to "Commissioner" denote Berryhill.

[3] Technically speaking, motions for summary judgment are procedurally improper vehicles for a decision on the merits of this Complaint, which appeals an administrative decision. Essentially, this Court treats Commissioner's motion for summary judgment as a motion for an
(continued)

Corral's motion is granted and Commissioner's motion is denied. Hence Commissioner's final decision is reversed and this case is remanded for further proceedings consistent with this opinion.

**Summary of the Record and of This Court's Rulings**

Background

      On September 25, 2012 Corral filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for SSI (R. 17). In both applications Corral alleged that his disability began on January 1, 2011. Corral's claims were initially denied on December 26, 2012 and upon reconsideration on May 31, 2013. Corral then filed a request for hearing and appeared and testified at a hearing held on May 8, 2014, at which vocational expert Matthew Lamley and medical expert Dr. Sai Nimmagadda also testified.

      ALJ Patricia Supergan presided at the hearing and entered a June 27, 2014 decision finding (1) that as to Corral's application for a period of SSDI he is not disabled under Sections 216(i) and 223(d) of the Act, and (2) as to his application for SSI he is not disabled under Section 1614(a)(3)(A) of the Act. In doing so the ALJ found that Corral could perform sedentary work with some limitations and that jobs exist in significant numbers in the national economy that Corral can perform. ALJ Supergan's opinion now represents Commissioner's final decision.

---

(footnote continued)
order affirming the Commissioner's decision, and treats Corral's motion as a motion for an order reversing the Commissioner's decision.

Summary of This Court's Rulings

Corral challenges his denial of benefits on the ground that ALJ Supergan erred when she failed to evaluate certain evidence properly. First he asks this Court to reverse the ALJ's rejection of Corral's testimony on credibility grounds and her finding that the descriptions by his mother-in-law Maria Koite ("Koite") of his symptoms and functional capacity are not credible. In those respects this Court agrees that ALJ Supergan did not properly evaluate the credibility of Corral's testimony and functional report or the third-party report prepared by Koite. Second, Corral argues that ALJ Supergan erred when, although she afforded all of the opinions of non-examining physician Dr. Nimmagadda "great weight," she gave "little weight" to his opinion that Corral may need to alternate sitting and standing every 30 minutes to an hour throughout the day to relieve pain, without adequately explaining her decision to do so. On that score this Court also agrees. And third, Corral contends that the ALJ erroneously afforded "little weight" to the opinion of an examining bone and joint specialist physician Dr. Elias, and once again this Court agrees.

On the whole Corral argues that ALJ Supergan committed reversible error when she failed to evaluate properly both his testimony and statements of medical experts that he could not sit for extended periods of time, and when she did not explain why she declined to include an option for Corral to change positions regularly or address his claim that he needs to lie down to relieve pain throughout the day in her residual functional capacity ("RFC") finding. In addition, she did not even address Corral's allegation that he needs to lie down periodically during the day to alleviate pain. Social Security Ruling ("SSR") 96-8p requires ALJs to include a "discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" (1996 WL 374184 (S.S.A.) at *7).

Specifically, testimony and opinions of a non-examining impartial medical expert (Dr. Nimmagadda), an examining physician (Dr. Elias), Corral himself and Koite all stated explicitly that Corral needs to alternate sitting and standing throughout the day to relieve pain and pressure on his back. This Court agrees that the ALJ's decision to reject those opinions summarily, and as a result to omit the option for Corral to alternate standing and sitting throughout the day, was made in error and against the weight of substantial evidence.

Medical Records

Several sources provided medical records to the Social Security Administration ("SSA"), of which only those relevant to the portions of the ALJ's opinion that Corral is contesting will be recited. In 1993 Corral suffered a herniated disc, underwent surgery and returned to work until 2003, at which time he experienced severe low back pain while lifting a heavy object (R. 384). Despite undergoing pain management treatment for a number of years, Corral consistently returned to doctors and specialists complaining of severe radiating lower back pain.

Each of the examining physicians who submitted medical records to the SSA noted that Corral's back pain was chronic and severe, and that it was continuing to get worse (R. 418, 384-85, 445-52. 463-64, 497, 601, 604-05). Moreover, test results in the record speak for themselves: In 2008 an x-ray showed central disc herniation with slight displacement of the thecal sac and transversing portions of the cauda equine, somewhat irregular protrusions and loss of epidural fat posterior to certain discs, which suggests scarring (R. 433). Corral has had at least three MRIs since he stopped working in 2003, and each of them has shown a herniated disc, impingement on the thescal sac and degenerative changes in the discs (R. 380-81). In particular Corral's 2012 MRI showed narrowing of the left neural foramina, and his 2013 MRI showed canal stenosis, foraminal stenosis and a disc tear (R. 600).

Neurosurgeon Dr. Kranzler examined Corral in 2012 and 2014, with both examinations resulting in his diagnosis of lumbar radiculopathy and suggestion that Corral undergo additional back surgery, though on the second occasion he noted that Corral was "able to manage with medication" (R. 497, 604, 607). In 2013 Dr. Elias (from the bone and joint center) performed several tests to measure the extent to which Corral's pain was in part psychological, with the results of each test reflecting that Corral was indeed more physical than psychological -- in other words, the tests did not indicate that Corral was malingering (R. 601). Dr. Elias also noted that Corral had an antalgic gait, range of motion that is limited by about 50%, difficulty getting on and off the examination table, pain with toe and heel walking, pain with squatting and positive straight leg raising (id.). Finally he opined that Corral has a "severe disability" and will have "significant difficulty holding a job as his history indicates and he will require multisystem management due to the stress that his body has taken over a period of two decades" (id.).

As for Corral's ability to do work-related activity, doctors have consistently noted serious limitations. When Corral's general physician Dr. Pedrera submitted a medical source statement of Corral's ability to do work-related activities to the SSA in 2010, he listed numerous limitations: Corral could only occasionally lift and carry as much as 10 pounds, sit as much as 6 hours in an 8 hour workday and stand and walk as much as 2 hours in an 8 hour workday, had limited ability to push and pull with lower extremities, could not climb, kneel, balance, crouch, crawl or stoop and had environmental limitations with temperature extremes, vibrations, humidity, hazards and fumes/odors, chemicals and gas (R. 428-31). Notably Dr. Nimmagadda, who was retained by the SSA to testify as an impartial nonexamining physician, listed in his testimony at the 2014 hearing most of the same limitations identified by Dr. Pedrera four years

earlier, but he added that Corral may need to alternate sitting and standing every 30 minutes to an hour for five minutes or less (R. 635-36).

Corral also submitted records from psychological examinations and treatment for depression and anxiety (R. 399-406, 535, 597). Those records reflect that Corral has suffered from depression and anxiety pain (R. 399-405). But examining psychologists note the absence of certain risk factors such as mental illness and suicidal ideation (R. 403-05, 535).

Corral's Symptoms

As part of his SSDI application Corral completed a function report on October 19, 2012 (R. 325). There he related that problems related to his herniated disk and back surgery made it difficult to bend or sit or walk for long periods of time, that he could not lift anything heavier than 5 pounds and that he cannot sit or stand for more than 30 minutes at a time (R. 326-31). Corral also wrote that he suffers from depression and spends most of his time isolated and that he is in chronic pain that requires constant medication (R. 326). Furthermore, the constant medication makes it difficult for him to focus on anything -- for instance, he tries to read newspapers but ultimately gives up (R. 327). In terms of his everyday functional capacity, he has trouble sleeping, dressing himself and bathing, he cannot prepare his own meals because he cannot stand for long periods of time, he leaves the house only 2 or 3 times a month, he shops for groceries once a month and he drives only if he is not medicated and has an emergency (R. 328-29).

At the May 8, 2014 ALJ hearing Corral testified as to his symptoms and impairments. There he explained that the last time he had worked was in 2013 on the line at a meatpacking plant, but to do so he needed accommodation from a supervisor who allowed him to take breaks because he could stand for only about 15 to 30 minutes at a time (R. 618-19, 633). When the

accommodating supervisor was switched out, Corral could no longer perform his job because it caused him too much pain to stand for prolonged periods without relief (id.). Corral also testified that often his pain is so severe that he cannot get out of bed, but that on a good day (when his pain level is at an 8 out of 10) he drives his kids to or from school (R. 630). In the two weeks before the hearing he had driven his kids to school and picked them up twice (R. 624). In addition, he often needs to lie down during the day to alleviate his back pain (R. 72, 632).

Corral's mother-in-law Koite completed a third party function report about Corral's condition (R. 340). In it she recounted that Corral is not able to walk more than one block, nor can he sit or stand for long periods of time, bend or lift heavy objects (R. 340-45). Furthermore she confirmed that he takes "strong medication" for his back pain and that he cannot sleep comfortably because of the pain, needs help dressing and bathing, cannot stand long enough to prepare his own meals and cannot sit on the toilet for very long because of the pain (R. 342-43). In addition she wrote that he suffers from depression and does not socialize and that the side effects of his medication cause him to need help handling money and remembering to take his medication (R. 343-44). Finally, Koite wrote that Corral rarely drives and usually leaves the house only to go grocery shopping or attend church once or twice a month (R. 343-45).

ALJ's Opinion

ALJ Supergan found that Corral met the insured status requirements of the Act through June 30, 2012 and had periodically engaged in substantial gainful activity since the alleged onset of January 1, 2011, though he had completely stopped working in 2013 (R. 20). In addition she found that Corral's obesity and degenerative disc disease constituted severe impairments, but that Corral did not have an impairment or combination of impairments equivalent in severity to one of those listed in Reg. Subpart P, App'x 1 (R. 20-22). As to his alleged depression, the ALJ

found that it did not cause Corral any moderate, marked or extreme functional limitations in the four areas used to evaluate mental disorders (R. 21).

In assessing Corral's RFC the ALJ made an adverse credibility determination and accorded little weight to Corral's testimony and his functional capacity report (R. 23-24). While finding that Corral's conditions could reasonably be expected to cause the symptoms of which he complained, the ALJ discounted his statements as to the intensity, persistence and limiting effects of those symptoms (id.). In addition, she gave little weight to the opinions of Drs. Pedrera, Kranzler and Elias (R. 24-27). By contrast, she gave great weight to the opinions of Dr. Nimmagadda except for his opinion that Corral may need to alternate sitting and standing throughout the day (R. 26). Thus ALJ Supergan found that Corral has the RFC to perform sedentary work as defined in Regs. §§ 1567(a) and 416.967(a). Although Corral could not perform his previous work, the vocational expert testified that with his limitations Corral could perform jobs such as order clerk, so that the ALJ found that he was not disabled (R. 28-29).

### Standard of Review and Applicable Law

This Court reviews ALJ Supergan's opinion as Commissioner's final decision, considering its legal conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). By contrast, factual determinations receive deferential review, so that courts may not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" and will affirm Commissioner's decision "if it is supported by substantial evidence" (id.). Substantial evidence is "more than a mere scintilla," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

- 8 -

Credibility determinations receive even more deferential review. Courts can reverse or vacate an ALJ's credibility findings only when the findings are "patently wrong" (Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008)), but ALJs commit reversible error when they ground their credibility determinations upon "errors of fact or logic" (Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006)).

As such cases as Haynes, 416 F.3d at 626 (internal quotation marks and citation omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion. The ALJ need not, however, provide a complete written evaluation of every piece of testimony and evidence.

Nonetheless an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding" (Denton v. Astrue, 425 (7th Cir. 2010) (per curiam)).

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (per curiam)). Rejection is also required if the ALJ has committed an error of law, regardless of how much evidence supports his or her factual findings (see Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)). And Larson v. Astrue, 615 F.3d 744, 749 (7th Cir. 2010) has reiterated the long-standing rule going back to SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943) that only reasons that appear in an ALJ's opinion may be considered on review. But "we will nonetheless give the opinion a commonsensical reading rather than nitpicking at it" (Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004) (internal quotation marks omitted)).

To qualify for benefits a claimant must be disabled within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009), citing Section 423(a)(1)(E)). Disability

is defined in Section 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4]

To determine whether a claimant satisfies that definition, the ALJ must conduct the sequential five-step inquiry set forth in Reg. § 1520(a)(4) (Liskowitz, 559 F.3d at 740)). In that inquiry the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)):

> (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

To receive disability benefits an applicant for SSDI must also meet the insured-status requirements outlined in Section 416(i)(3). That means, for his SSDI claim only, that Corral must show he was under a disability after his alleged disability onset date of January 1, 2011 but before his insured status expired on June 30, 2012 (Martinez v. Astrue, 630 F.3d 693, 699 (7th Cir. 2011)). But for Corral's SSI application he can establish disability at any time between his application date and the present (see Reg. §§ 416.200, 416.202 (g)).

---

[4] Section 423 and 20 C.F.R. Part 404 govern SSDI claims, while Section 1382 and 20 C.F.R. Part 416 govern SSI claims. Typically the two statutes (like the two parts of the C.F.R.) use identical language, with some minor variations in wording that do not reflect substantive legal differences. For the sake of brevity this opinion will cite only to Section 423 and Part 404, except of course in instances where they materially diverge from Section 1382 (or from Sections 1382a, 1382b, 1382c, etc.) and Part 416, respectively.

### Evaluation of Corral's Symptoms

Reg. § 1529 calls for a two-step procedure in evaluating the impact of Corral's pain on his ability to work. First the ALJ must determine that Corral actually does have a medical impairment that could reasonably be expected to produce his symptoms (Reg. § 1529 (b)). If he does, the second step requires the ALJ to see if his statements about his pain are consistent with the rest of the record (Reg. § 1529 (c)(4)). In doing so ALJs are instructed by Reg. § 1529 (c)(2) to consider objective medical evidence but not to discount a claimant's assertions solely because they are not substantiated by that evidence. As Reg. § 1529 (c)(3) explains, "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." In addition Villano, 556 F.3d 562 (internal citation omitted) instructs:

> In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons.

Thus the ALJ must explain which symptoms were found to be consistent or inconsistent with the evidence and how evaluation of those symptoms led to the ALJ's conclusions (SSR16-3p, 81 Fed. Reg. 14166, 14170, 2016 WL 1119029 at *8 (Mar. 16, 2016)). Moreover, as Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007) has reiterated, "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."

ALJ Supergan found that "Corral's allegations are not fully credible" in part because "[h]e has made inconsistent statements . . . [t]he claimant has poor work history . . . [t]he claimant applied for state unemployment benefits after the alleged onset date in this case. In order to qualify for such benefits, applicants typically must affirm that they are capable of working. Thus the claimant apparently claimed an ability to work when applying for another form of

government benefits, while currently alleging an inability to work during the same period fo

time, which brings into question the reliability of the claimant's allegations generally" (R. 24,

internal citations omitted). In so finding the ALJ engaged in precisely the type of character-

based credibility determination that the SSA cautioned against in its recent guidance contained in

SSR 16-3p, 81 Fed. Reg. 14166, 14171, 2016 WL 1119029 at *10 (March 16, 2016) on how to

evaluate a claimant's symptoms:

> In evaluating an individual's symptoms, our adjudicators will not assess an
> individual's overall character or truthfulness in the manner typically used during
> an adversarial court litigation. The focus of the evaluation of an individual's
> symptoms should not be to determine whether he or she is a truthful person.
> Rather, our adjudicators will focus on whether the evidence establishes a
> medically determinable impairment that could reasonably be expected to produce
> the individual's symptoms and given the adjudicator's evaluation of the
> individual's symptoms, whether the intensity and persistence of the symptoms
> limit the individual's ability to perform work-related activities.

It plainly appears that the ALJ based her findings in part on the facts that she determined

undermined Corral's testimony in terms of his personal credibility, rather than confining her

decision to whether his impairments could reasonably be expected to produce his stated

symptoms. Instead she has listed his past inconsistent statements and occasions in the past when

he may have lied, such as in his application for unemployment insurance.[5]

In addition, ALJ Supergan gave "little weight" to Koite's third-party function report

because of perceived inconsistencies between that report and Corral's testimony: For one thing,

Koite wrote that Corral does no chores but may go grocery shopping twice a month, while Corral

---

[5] In that respect our Court of Appeals has specifically cautioned ALJs against using
unemployment applications to undercut disability claims without considering the progressive
severity of the disability (Scrogham v. Colvin, 765 F.3d 685, 699 (7th Cir. 2014)). And besides,
Corral testified that he was able to work with a certain accommodation until 2013, when he quit
because he experienced severe pain at work and the supervisor who usually accommodated him
was reassigned.

claimed that he does light household chores but never goes grocery shopping. And another
reason the ALJ gave for rejecting Koite's report was "the close relationship between the claimant
and his mother-in-law and the possibility that the report was influenced in favor of the claimant
by a desire to help the claimaint."

As to the first of the ALJ's reasons, it can only be described as needless nitpicking --
when pressed about what kind of household work he does, Corral stated:

> A:     [the mother of my children] pretty much does everything . . .
>
> Q:     Do you do any cooking?
>
> A:     No not really. It's just straight out of the house [phonetic] a little bit from
>        like little things like from the table to seeing [phonetic] -- little things like
>        that. She does whatever -- she does most of the -- she does everything
>        else.
>
> Q:     Do you help with the grocery shopping?
>
> A:     No.

So Corral's hearing testimony communicated generally that he made minimal contributions to
household work, which is entirely in line with Koite's report. And it is worth noting that he gave
that testimony two years after Koite wrote her report, so that he may have done some grocery
shopping in the past but has since stopped. As to the ALJ's second reason for rejecting Koite's
report, Garcia v. Colvin, 741 F.3d 758, 761 (7th Cir. 2013) cautions against automatically
attributing bias and assigning lesser weight to the testimony of a family member.

And there is more: In the ALJ's discussion of Corral's RFC she asserted that Corral's
"activities of daily living suggest greater ability" than he had claimed, once again pointing to
statements that she claimed are inconsistent and unreliable -- but those to which she pointed are
really not so. For instance, the ALJ said that he "drives his children home from school" as if it

- 13 -

were a regular occurrence, when Corral actually testified under oath that he had driven only twice in the last two weeks and that he drove only when he was not on heavy medication to control his pain. Koite wrote that he drove even more rarely -- once or twice a month. And in any case our Court of Appeals has counseled against conflating the ability to do sporadic household chores with being able to handle substantial gainful activity (see, e.g., Engestrand v. Colvin, 788 F.3d 655, 661 (7th Cir. 2015)).

ALJ Supergan further stated that Corral "claims to have work accommodations but there is no indication of it in the record. He testified to stopping work due to pain but given the minimal findings, there is no basis for this" (R. 24). But in his hearing testimony Corral described an informal agreement with his supervisor that allowed him to take periodic breaks from standing on the line, so the ALJ should hardly expect that accommodation to have been documented. And to claim "there is no basis" for Corral having stopped work because of his pain ignores the fact that Corral was working the line in a meatpacking plant despite the opinions of no less than four people (including two doctors) that he cannot stand for long periods of time.

Finally, in determining that Corral has the RFC to perform sedentary work, on several key points the ALJ impermissibly argued against the evidence on the basis of her own lay medical opinion. For instance, she asserted that "the claimant's impairments are not supported by medical records to the extent alleged. The claimaint had essentially normal physician examinations with minimal clinical findings" (R. 24). To the contrary, each physician who has examined Corral reported that he has a herniated disk and conditions that affect nerves in the lower back that would be expected to cause significant back pain, such as impingement of the thescal sac (R. 380-81), radiculopathy (R. 384), canal stenosis and foraminal stenosis (R. 600). And as would be expected, all doctors who examined Corral wrote that he complained of severe

radiating lower back pain.  That Corral places his pain at a level of 8 to 10 on a 10 point scale on

any given day is hardly unreasonable based on the objective medical records.  Furthermore

Johnson v. Barnhart, 449 F.3d 804, 806 (7th Cir. 2006) certainly cuts in favor of crediting a

claimant's reasonable statements about the severity of his pain, as it cautions that "[t]he etiology

of pain is not so well understood, or people's pain thresholds so uniform, that the severity of the

pain experienced by a given individual can be 'read off' from a medical report."

      In sum, the ALJ assigned to the case on remand (more on this subject later) must conduct

a new credibility determination for Corral and Koite that is in line with the regulatory

instructions and the weight of substantial evidence in the record.  Although courts afford

significant deference to an ALJ's credibility determination, this Court cannot defer to a

determination that is conducted in contravention of case law, current regulations and facts in the

record (see Binion v. Chater, 108 F.3d at 782) or that is based upon "error of fact or logic"

(Allord, 455 F.3d at 821).

### Dr. Nimmagadda's Testimony

      Dr. Nimmagadda testified at Corral's hearing as a non-examining medical expert.  As to

non-examining physicians Reg. § 1527(c)(3) explains that:

> the weight we will give their opinions will depend on the degree to which they
> provide supporting explanations for their opinions.  We will evaluate the degree
> to which these opinions consider all the pertinent evidence in your claim,
> including opinions of treating and other examining sources.

In his testimony Dr. Nimmagadda did not provide any explanations for any of his opinions --

instead he confirmed only that he had sufficient information to form an opinion on Corral's case

(R. 635).  Despite that, ALJ Supergan afforded his opinions "great weight" because "he is an

expert familiar with Social Security law and regulations; he had the benefit of hearing the

- 15 -

claimant's testimony. He also reviewed a more comprehensive record than other experts who may have reviewed the record at the initial and reconsideration levels" (R. 27). Hence the ALJ accepted the bulk of Dr. Nimmagadda's opinions as to Corral's condition, but with the caveat that "the record does not support" the opinion that Corral needs to "alternate standing and sitting throughout the day to relieve back pain pressure every 30 to 60 minutes for five minutes or less" (id.). ALJ Supergan did not accompany that summary rejection of a medical opinion with any reference to record evidence or with any explanation as to why that particular opinion of Dr. Nimmagadda came up short. That too amounts to reversible error.

Brown v. Colvin, 845 F.3d 247, 251 (7th Cir. 2015), quoting Villano, 556 F.3d at 562, cautions that "[w]hile an ALJ need not painstakingly evaluate every piece of evidence when undertaking this analysis, the ALJ 'must build a logical bridge from evidence to conclusion.'" On its face Dr. Nimmagadda's opinion that Corral may need to alternate sitting or standing during the day to alleviate back pain appears to flow logically from his other opinions, and indeed conforms to the opinions of other doctors -- that is, it is not an outlier. Over the past decade Corral's medical records repeatedly referred to chronic and severe back pain that radiated down the leg, while the records have pointed to specific testing and MRIs that show he has physiological impairments in his back that would be expected to cause that pain -- and Corral, Koite and Dr. Elias, another examining doctor, also opined that he needs to alternate sitting and standing throughout the day to relieve back pain.[6]

As such, ALJ Supergan's decision to reject that part of Dr. Nimmagadda's opinion while affording the rest "great weight" defies logic. And worse, the ALJ did not offer any real

_____

[6] That ALJ Supergan erred in giving no credence to Corral's own testimony will be discussed below.

- 16 -

justification for doing so, and she certainly did not cite anything in the record that contradicts the opinion. So the ALJ assigned to the case on remand is instructed to reweigh Dr. Nimmagadda's opinion that Corral needs to alternate sitting and standing and to explain with specificity his or her reasoning for assigning his opinion such weight.

### Dr. Elias' Opinion Evidence

As stated earlier in the <u>Medical Records</u> section of this opinion, Dr. George Elias of the bone and joint center examined Corral in 2013, and during the course of his exam he ordered and reviewed an MRI. Dr. Elias opined among other things that Corral had been suffering from lower back pain that radiated down his legs for nearly two decades, that he was disabled and that in that respect he had difficulty sitting or standing for less than 15 minutes and had problems lifting, reaching, pushing, pulling, bending over, dressing, putting on clothes, shoes and socks, climbing down stairs, getting in and out of a chair, sitting, driving, squatting, carrying, walking, standing, running, twisting and yard work (R. 26). In addition Dr. Elias observed that Corral has a left antalgic gait and a limited range of motion.

ALJ Supergan gave "little weight" to Dr. Elias's opinion because according to her, that opinion:

> provides no function-by-function analysis (SSR 96-8) and the opinion is conclusory with little explanation. Dr. Elias's opinion is based upon the claimant's subjective complaints and is not consistent with medical records. Dr. Elias's opinion is not supported by objective clinical or laboratory findings, and most notably it is based on a one-time evaluation with clinical findings not even noted as to range of motion. Finally it was prepared at the request of the claimant's representative (R. 26).

Of that laundry list of reasons, the fact that Dr. Elias performed a one-time evaluation may fairly justify affording his opinion less weight than those of doctors with a longer treating relationship (see Reg. § 1527(c )(2)(i)). In addition, the ALJ would have been justified in disregarding some

of Dr. Elias's more conclusory opinions, such as the one that Corral is "severely disabled," because that is a legal determination reserved for the ALJ, and at certain points in Dr. Elias' rather narrative report he offered some unexplained opinions -- such as "[t]he [MRI] report itself does not do justice to [Corral's] condition overall" -- that the ALJ would have been justified in according little weight.

But instead ALJ Supergan accorded Dr. Elias' opinion as a whole "little weight," even though he examined, performed tests and gave recommendations that were in line with the rest of the medical record. And this Court holds that the balance of the ALJ's reasons for according Dr. Elias' opinions "little weight" are the result of errors of fact and law or are not supported by substantial evidence. To begin with, SSR 96-8, 1996 WL 374184 (June 2, 1996), does not require physicians to perform a function-by-function analysis -- instead it explains how the Commission will evaluate a claimant's RFC, a determination that is reserved for the ALJ or reviewing authority. So for an ALJ to reject an opinion because it lacks a function-by-function analysis constitutes an error of law, which is alone enough to reverse and remand the judgment (Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)). But in addition, the other reasons that the ALJ gave for according Dr. Elias' opinion "little weight" are likewise errors of fact or not supported by substantial evidence.

First, the notion that Dr. Elias based his opinion entirely on subjective complaints is factually inaccurate. In addition to asking Corral about his own perception of his pain and abilities, Dr. Elias also observed Corral, examined him, performed several tests that measure his motor functioning and ordered and reviewed an MRI (600). In particular, Dr. Elias explained the results of Corral's MRI at length (R. 600).

- 18 -

Next, ALJ Supergan rejected Dr. Elias' opinion in part because he was retained by Corral's representative. But our Court of Appeals is very clear that "the fact that relevant evidence has been solicited by the claimant or her representative is not sufficient justification to belittle or ignore that evidence" (Punzio v. Astrue, 630 F.3d 704, 712 (7th Cir. 2011)). Of course, if there were any indicia of bias on the part of Dr. Elias, the fact that his examination had been requested by Corral would help to tip the scales -- but the ALJ has identified nothing along those lines.

Finally, it is not true that Dr. Elias' opinion was unsupported by clinical or laboratory findings. And the assertion by the ALJ that it was unsupported is based at least in part on an error of fact: In that respect she listed a negative result in the Waddell sign test as cutting against Dr. Elias' opinion that Corral has bona fide severe back pain, while in fact Waddell signs are "five signs indicating that a patient's low back pain is being intensified by psychological factors," so that a negative result would support the doctor's opinion that Corral's pain is real (see Dorland's Illustrated Medical Dictionary (32d ed.) at 1716). ALJ Supergan was simply wrong.

In addition, the bulk of Dr. Elias' opinions were consistent with those of other examining physicians. For instance, Corral's general physician Dr. Pedrera also identified limitations regarding carrying more than 10 pounds, climbing, balancing, kneeling, crouching, crawling, pushing and pulling, and he opined just one year earlier that Corral was unable to stand more than 2 hours in an 8 hour work day and sit more than 6 hours in an 8 hour work day (R. 428-49). And another physician, Dr. Kranzler, observed diminished sensation, limited range of motion and pain worsened by sitting, standing, walking sleeping, resting, going up or down stairs and exercising (R. 512). Likewise Dr. Nimmagadda, the impartial non-examining medical expert,

also stated that Corral suffers from degenerative disc disease and may need to take breaks from sitting or standing every 30 minutes to an hour for five minutes or less (R. 636).

If any other ALJ were to accord Dr. Elias' opinions "little weight," he or she would have to explain more adequately and with specificity why his opinions are not consistent with objective medical evidence, taking care to avoid the already listed errors of fact and law. But as it stands this Court "cannot uphold an administrative decision . . . that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome" (Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010)).

### Failure To Follow SSR 96-8

SSR 96-8 requires that the "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence" (1996 WL 374184 (S.S.A.) at *7). But ALJ Supergan did not adequately explain why she rejected Corral's allegation that he cannot sit or stand for long periods of time, a limitation that was also proffered by two medical experts and Koite. In his testimony Corral twice stated that he needs to lie down during the day to manage his pain, but nowhere in the ALJ's opinion did she address that asserted limitation (R. 632, 72). And she gave "little weight" to each opinion that Corral needed to alternate sitting and standing at regular intervals throughout the day, but as already discussed each of those decisions was a result either of an error of law or an error of fact or of not being adequately explained or of being against the weight of the evidence.

And in no instance did the ALJ explain specifically why she was rejecting the sitting/standing limitation itself, nor did she even mention Corral's assertion that he needed to lie down during the day to relieve pain. Indeed, the closest she came to addressing the

- 20 -

sitting/standing limitation directly was with regard to Dr. Nimmagadda's opinion, and to that she simply stated "I find that the record does not support the need for the claimant to alternate standing and sitting throughout the day to relieve back pain and pressure every 30 to 60 minutes for five minutes or less" (R. 27).  But as <u>Thomas v. Colvin</u>, 534 Fed.App'x 546 , 550 (7th Cir. 2013) has clearly stated, "the ALJ's RFC assessment needed to address why [the claimant's] reported limitations were or were not consistent with the evidence in the record."

As it stands, ALJ Supergan's decision to discredit generally the claimant and Koite, to issue a blanket rejection of all Dr. Elias' opinions and to reject the sitting/standing limitation portion of Dr. Nimmagadda's opinion does not, without more, form an adequate basis to reject the limitation.  For that reason the ALJ handling the case on remand will have to conduct a new RFC assessment.

<u>**Conclusion**</u>

Social Security cases form too small a component of this Court's docket to permit it even to consider the possibility of extrapolating all of the ALJ's major mishandlings of this case to a more generalized concern as to the handling of such cases at the administrative level.  And as to ALJ Supergan in particular, it cannot be told whether this was simply a bad day on her part or whether there is cause for concern in more general terms.  That however is a subject for the administrative branch rather than the judicial branch to determine.

In the same way, the selection of an ALJ to handle Corral's case on remand is for the Commissioner to decide.  All the same, any regular reader of opinions from our Court of Appeals will recognize its continuing sharp criticism of the administrative handling of these Social Security cases, most often authored by (but not at all limited to) Judge Richard Posner.  This case is really a poster child for the poor handling of Social Security cases described in those opinions.

Although our Court of Appeals (and this Court as well) recognizes and respects the allocation of that responsibility to the Commissioner rather than to Article III judges, that court has frequently urged (and this Court has occasionally echoed its urging) that a substantial level of error the first time around calls for reassignment to a different ALJ on remand. This case is a prime candidate for such a reassignment, and this Court respectfully recommends that to the Commissioner.

Accordingly, for the reasons stated in this opinion, Corral's motion for summary judgment is granted while the Commissioner's is denied. Hence the Commissioner's final decision is reversed and remanded for rehearing pursuant to Sentence Four of Section 405(g).

_____
Milton I. Shadur
Senior United States District Judge

Date: July 19, 2017

- 22 -